U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - ALEXANDRIA

MAR 2 0 2008

ROBERT H. SHEMWELL, CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| HAZEL JONES, ET AL | : | DOCKET NO. 06-0056 |
|---|---|---|
| VS. | : | JUDGE TRIMBLE |
| THE ALLEN PARISH CORRECTIONAL CENTER, ET AL | : | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Before the Court is a "Motion for Summary Judgment" (doc. #17) filed by defendants, The GEO Group, Inc., Kent Andrews, Mark Estes, Murray Crutcher, Walter Garnett, Patricia Mapel and LaShonda Hall wherein the movers seek to dismiss all of plaintiff's claims pursuant to Rule 56 of the Federal Rules of Civil Procedure. Defendants maintain that (1) plaintiffs lack standing to bring these claims on either her own behalf or on behalf of her grandchildren, and (2) plaintiffs have failed to establish that defendants were deliberately indifferent to Inmate Jones' safety. For the reasons to follow, the motion will be granted dismissing with prejudice the claims against the defendants.

## FACTUAL STATEMENT

Plaintiffs make the following allegations in their Complaint. Hilton Jones was an inmate in the Allen Parish Correctional Center ("Correctional Center"). The Correctional Center is staffed by the GEO Group, Inc.[1] While incarcerated at the Correctional Center, Mr. Jones was housed in the Mercury Dorm D-2. At that same time, inmate Shavis Toby was housed in Mercury Dorm C-1. Even though these two inmates were housed in the same building, they were housed in separate

---

[1] Formerly known as Wackenhut Corrections Corp.

dorms.

On or about January 19, 2005, Mr. Toby gained access to the television/recreational room on Mercury Dorm D-2, an area in which he was not supposed to be, and fatally stabbed Mr. Jones. Plaintiffs allege that defendants, Officers Garnett and Mapel were in the pod/control room which controlled access to Mercury Dorm D-2 at the time of the stabbing. Plaintiffs allege that Officers Garnett and Mapel were deliberately indifferent by allowing Mr. Toby to gain access to the Mercury Dorm D-2. Plaintiffs further allege that Officers Garnett and Mapel were deliberately indifferent for taking no action to remove Mr. Toby until after the fatal stabbing occurred.

Plaintiffs allege that all of the defendants were deliberately indifferent to the safety of Mr. Jones by not monitoring access from one housing dorm to another, despite knowledge of Mr. Toby's dangerous propensities to attack other inmates. Plaintiffs allege that defendants, Allen Parish Correctional Center and The GEO Group are vicariously liable pursuant to the doctrine of respondeat superior for the acts of all of the defendants. Finally, Plaintiffs allege that defendant, Officer Hall, an employee of The GEO Group, Inc. knew that engaging in an intimate relationship with an inmate, namely Mr. Toby, presented a substantial risk of serious harm, and that she disregarded said risk of harm by engaging in the relationship. Plaintiff, Hazel Jones, is the mother of the deceased victim, Hilton Jones. Ms. Jones brings this suit individually and on behalf of her three grandchildren, Courtland Jones, Kayura Jones and Hilton Jones, III. Plaintiffs assert that Defendants have violated the civil rights of inmate, Hilton Jones, pursuant to 42 U.S.C. § 1983.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, when viewed in the light most favorable

to the non-moving party, indicate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[2] A fact is "material" if its existence or nonexistence "might affect the outcome of the suit under governing law."[3] A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.[4] As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim."[5] Once the movant makes this showing, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial.[6] The burden requires more than mere allegations or denials of the adverse party's pleadings. The non-moving party must demonstrate by way of affidavit or other admissible evidence that there are genuine issues of material fact or law.[7] There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party.[8] If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[9]

## LAW AND ANALYSIS

Defendants maintain that Plaintiffs can not establish that they violated the Eighth

---

[2] Fed. R.Civ. P. 56(c).

[3] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

[4] *Stewart v. Murphy*, 174 F.3d 530, 533 (5th Cir. 1999).

[5] *Vera v. Tue*, 73 F.3d 604, 607 (5th Cir. 1996).

[6] *Anderson*, 477 U.S. at 249.

[7] *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

[8] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[9] *Anderson*, 477 U.S. at 249-50.

Amendment protection afforded Mr. Jones. Defendants also maintain that neither Plaintiff, individually, nor on behalf of her grandchildren has standing to bring the claims in this lawsuit.

*Civil rights violations*

A prison official's "deliberate indifference" to a substantial risk of serious harm to an inmate violates the Eighth Amendment.[10] To prevail on a failure-to-protect claim, an inmate "must show that he was 'incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection.'"[11] "In order to act *with deliberate indifference,* 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'"[12] "The response demanded of jail officials with actual knowledge of such risk of serious injury is that he not act with deliberate indifference."[13] "Deliberate indifference, *i.e.,* the subjective intent to cause harm, cannot be inferred from a prison guard's failure to act reasonably."[14]

Plaintiffs maintain that there are several genuine issues of fact which would preclude granting the summary judgment motion. They are as follows:(1) Captain Garnett and The GEO Group knew of multiple attempts by Mr. Toby to reach the recreation area, (2) Captain Garnett testified that Mr. Toby was "adamant about coming to the walk, " he had "something to do," and

---

[10] *Helling v. McKinney,* 509 U.S. 25, 113 S.Ct. 2475 (1993).

[11] *Newton v. Black,* 133 F.3d 301, 308 (5th Cir. 1998).

[12] *Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970, 1979 (1994).

[13] *Hare v. City of Corinth,* 74 F.3d 633 (5th Cir. 1996).

[14] *Id.* at 649, citing *Farmer, supra.*

4

was in a "place he didn't belong,"[15] (3) Captain Garnett took no action to remove Mr. Toby from the area which allowed him access to Mr. Jones,[16] (4) Captain Garnett, Warden Andrews, Sergeant Mapel and The GEO Group had detailed knowledge of a lack of sufficient prison staff to protect inmates from attacks perpetrated by other inmates,[17] (5) there was only one correctional employee, Captain Garnett, to control 336 inmates even though it was recognized by prison officials that the time designated as "return from chow" was a "high traffic" time on the "walk" and "tier,"[18] (6) Captain Garnett failed to take appropriate action to remove a dangerous inmate who was "adamant" about reaching the area of Mr. Jones during a period of high traffic movement on the tier, (7) the defendants, The GEO Group, Warden Andrews, Captain Garnett, Warden Estes, Associate Warden Bill Crutcher and Sergeant Mapel had possession of DOC correctional records and Disciplinary Board hearings of Mr. Toby which revealed a history of prior attacks, including knife attacks prior to the stabbing of Mr. Toby,[19] (8) in the one (1) year prior to the murder of Mr. Jones, Defendants were aware of multiple instances of inmate/guard relationships occurring at the Correctional Facility but failed to institute remedial training, (9) prior to the murder of Mr. Jones, defendant, Guard Hall was involved in an inappropriate and intimate relationship with Mr. Toby, (10) Sergeants Mapel and Rose were aware of the inappropriate relationship, but failed to report it or institute mandatory disciplinary procedures against Guard Hall, (11) there was an altercation between Guard Hall and

---

[15] Garnett depo, pp. 32-33.

[16] *Id.*

[17] Garnett depo., pp. 39-41, Mapel depo., pp. 13-16, Warden Andrews depo., p.38.

[18] Garnett depo., pp. 39-41, Mapel depo., pp. 14-24, Warden Andrews depo., p. 41.

[19] Armbruster depo., pp. 90-93.

Mr. Jones resulting in Guard Hall reporting the incident/altercation to Mr. Toby, and (12) Guard Hall failed to report the altercation between herself and Mr. Jones to the appropriate prison officials.

Plaintiffs submit that these actions and/or omissions of Defendants were made with deliberate indifference concerning the safety of Mr. Jones. Plaintiffs assert that Captain Garnett knew that Mr. Toby was trying to gain access to an area he did not belong, yet took no affirmative action to insure the he was returned to his dorm. However, Captain Garnett testified that at the time he was trying to move all the inmates, he felt it was not a security matter at that time, nor did he consider it a serious offense.[20] He also testified that Mr. Toby was not the only inmate that he had to tell several times to get back in his dorm.[21]

Plaintiffs suggest that Captain Garnett, Warden Andrews, Sergeant Mapel and The Geo Group has detailed knowledge of a lack of sufficient prison staff to protect inmates from attacks of other inmates. Captain Garnett testified that one person on the floor is sufficient, but he also acknowledged that in high traffic times, it would be better to have more than one person on the floor.[22] Sergeant Mapel testified that there were usually two people on the floor.[23] She then testified that this was just her opinion that it was better to have two people on the floor as opposed to one.[24] Warden Andrews testified that the Facility was short staffed, but that it was continuously short

---

[20] Garnett depo., pp. 32-34.

[21] *Id.*

[22] Garnett depo., pp. 33-34.

[23] Mapel depo. p.13-16.

[24] *Id.*

staffed, and that during high traffic times there should probably be a couple of guards on the floor.[25] Defendants maintain that even assuming that the prison was understaffed, this fact does not establish Plaintiff's claims under 42 U.S.C. § 1983. The Court agrees. See *Doe v. Sullivan County*,[26] (evidence of prison overcrowding or a shortage of jailers does not establish a plaintiff's burden on a § 1983 failure to protect claim), see also *Rapier v. Kankakee County*,[27] (plaintiff's argument that additional staff at jail could have prevented inmate's death was not sufficient to state a claim under 42 U.S.C. § 1983).

Plaintiffs assert that prison officials had access to records and/or disciplinary hearings that revealed that Mr. Toby had been involved in prior attacks with a knife. In his deposition, Plaintiff's expert Armbruster, Jr. testified that in his opinion prison officials should have informed the Guards and Officers that Mr. Toby had previously stabbed another inmate. Neither of the parties have submitted evidence of the DOC records that document the alleged stabbing or the factual circumstances involved. For purposes of this motion, the Court will assume and consider the fact that Mr. Toby had previously stabbed another inmate. Even assuming that the prison officials had records that revealed that Mr. Toby had previously stabbed another inmate, Plaintiffs have failed to establish that any of these defendants (prison officials) acted with deliberate indifference, or that any of the defendants acted or failed to act with subjective culpability as enunciated in *Farmer, supra*.

Plaintiffs complain that Defendants were aware of multiple instances of inmate/guard relationships occurring at the Facility but failed to institute remedial training. Warden Andrews

---

[25] Andrews depo. pp. 38-41.

[26] 956 F.2d 545, 550 (6th Cir. 1992), *cert. Denied*, 506 U.S. 864. 113 S.Ct. 187 (1992).

[27] 203 F.Supp.2d 978, 985 (C.D.Ill (2002).

testified that he was aware of several (approximately three (3)) instances in which a prison officer/guard had been involved in an improper relationship with an inmate.[28] He further testified that neither he nor The GEO Group had been informed of the relationship between Guard Hall and Inmate Toby.[29]

Plaintiffs complain that Guard Hall, Sergeants Mapel and Rose knew of the intimate relationship between Guard Hall and Inmate Toby. Sergeant Mapel testified that she had found out the evening before the incident that Inmate Toby was sending letters to Guard Hall. She further testified that she warned Guard Hall to report it.[30] The parties have submitted no evidence as to the extent of the relationship between Guard Hall and Inmate Toby other than he was sending the Guard letters. Assuming that these defendants had this knowledge- learned the day before the accident, – the Court finds that even though these defendants failed to immediately report the relationship, such conduct does not rise to the level of their having acted with deliberate indifference as to the safety of Mr. Jones.

Plaintiffs complain that Guard Hall failed to report an "altercation" she had with Mr. Jones to prison officials. The Court will assume that this alleged "altercation" is what precipitated the subsequent attack on Mr. Jones by Mr. Toby. Plaintiffs submit a "Supplementary Investigating Officer's Report" by the Allen Parish Sheriff's Office. The investigator, Roger Christian, interviewed Inmate Chris James Leblanc on January 21, 2005. During that interview, Inmate Leblanc told the investigator the following:

---

[28] Andrew's depo. p. 44.

[29] *Id.*

[30] Mapel depo. p. 34 There is no evidence in the record as to when Sergeant Rose became aware of the relationship.

> A. Me and Jones came out of, went eat chow, sat at the same table, came out. And ah we was going back to the Unit. Jones stopped and spoke to the ah the rover Sargent [sic] which was a black female officer. And asked her how she was doing today. She didn't answer him, so he said, what's the matter you not talking to anybody today. Again she didn't answer. Jones stated to her well if I see you by C-1 again I got something for you. Joking at her, just to break the monotony of the day.
> Q. You stated that when you and Jones came from chow Jones stopped a black female officer and told her this?
> A. Yes sir
> Q. What did he mean by when he told her this?
> A. Just general conversation. It was no meaning to it whatsoever.[31]

The Court will assume that the black female officer is Guard Hall. Immediately after that, Mr. Jones walked off and Inmate Leblanc told the investigator of his further observations as follows:

> Q. Did you talk to the suspect in question, Toby?
> A. Yes sir, I did. Because when Toby came out of the kitchen, the, he stopped to speak with the female officer
> Q. So you are saying that Toby came out of the kitchen
> A. And, and spoke with the female Officer. Well the female officer stopped him. They were speaking with one another. I heard when the Security Guard, female woman told Toby that Jones stated that if Jones caught Security Guard by C-1 talking to anybody again, he had something for her. Only was a joking matter
> Q. Okay
> A. Toby got sever [sic] angry, didn't even reply nothing back to the woman and started walking, down the walk to Mercury Unit where he lives at. I stopped Toby, told Toby, said Toby, because I heard the whole conversation, I was only about three feet away from em. I told Toby, I said Toby it's not that serious man. He was only playing with the lady. Toby stated that Niger will never get in my business again.[32]

Shortly thereafter, Inmate Leblanc followed Mr. Toby to the Mercury Unit in Tier A-2 where Mr. Toby approached Inmate Roy. Mr. Toby requested and was given a knife from Mr. Roy.[33] Later

---

[31] Plaintiff's exhibit E.

[32] *Id.*

[33] *Id.*

9

that day, Inmate Leblanc observed Mr. Toby gain access to the recreational/TV room and then stab Mr. Jones while he was watching TV.[34] Inmate Leblanc stated that the entire incident lasted about fifteen (15) to twenty (20) seconds.[35]

The Court concludes that Plaintiffs have failed to establish that any of the defendants acted with deliberate indifference to the safety of Mr. Jones. Defendants had no actual knowledge of, nor could they have perceived an excessive risk of harm to Mr. Jones, thus they have not violated the deceased inmate's constitutional rights under the Eighth Amendment.

*Do the plaintiffs have standing?*

Defendants maintain that plaintiff, Hazel Jones, the mother of Mr. Jones, does not have standing to bring this wrongful death suit. Plaintiff, Ms. Jones, concedes that under Louisiana Civil Code articles 2315.1 and 2315.2, she has no individual right of action. Accordingly, the claims of Hazel Jones, individually, will be dismissed for lack of standing to bring suit.

Defendants maintain that Mr. Jones does not have the legal authority to proceed in this suit on behalf of her grandchildren. Defendants have submitted a "Provisional Custody By Mandate"[36] as proof that the children's mother, Renee' Butler, remains the natural tutor of the children. Plaintiffs argue that the Mandate transferred the right to bring a lawsuit from Ms. Butler to Ms. Jones. An unemancipated minor does not have the procedural capacity to sue.[37] "[T]he tutor appointed by a court of this state is the proper plaintiff to sue to enforce a right of an unemancipated

---

[34] *Id.*

[35] *Id.*

[36] Defendant's exhibit L.

[37] Louisiana Code of Civil Procedure art. 683.

minor. . . ." A provisional custody by mandate is not the equivalent of the appointment of a tutor. Accordingly, because Ms. Jones has not been appointed by a court as tutor for the minor children, she has no standing to bring this suit on behalf of her grandchildren.

## CONCLUSION

Based on the foregoing, the motion for summary judgment filed by Defendants will be granted dismissing all claims against them with prejudice.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 20th day of March, 2008.

*[signature]*
JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE